## STEPHEN W. ISLER v. JENNIE COLGROVE.

The lien acquired by a judgment obtained in 1861, upon which execution issued and was levied upon the land in controversy, which lien was kept alive by subsequent alias executions, duly issued from term to term, until under the last of them the said land was sold by the sheriff, 7th May, 1872, is not waived or lost, because the judgment on the 30th November, 1868, was docketed in another county, especially when the transcript of the judgment so entered upon the docket contained an ab‑ stract of the several writs of execution, issued from time to time, with the returns thereon, from which the relation of the lien back to the date of the judgment fully appeared.

A sheriff having sundry executions in his hands against the same defen‑ dant, and levied on the same tract of land, sold the land, when the plain‑ tiff, in one of the executions, claimed by said plaintiff to have priority over all the others, bid said land off, demanding of the sheriff that the amount of his bid should be credited on the execution held by the sheriff in his favor; this was refused and the plaintiff's bid demanded to be paid in cash, which the plaintiff failed to do: HELD, that the plaintiff acquired no title by his supposed purchase; that the sheriff had a right to require the purchase money to be paid in cash, and had also the right to re‑sell the land, if the purchase money was not so paid.

A sheriff who sells under execution, *may* take on himself to decide which of several executions in his hands is entitled to priority of payment out of the purchase money. But such decision will be at his peril, and he is not required to make it.

A plaintiff who has put an execution in the hands of a sheriff, may withdraw it before it is so acted on that its withdrawal would be injurious to third parties. He may equally direct the sheriff not to act on it, which would be equivalent to withdrawing it.

In the case of a sale under a junior lien, (docketed judgment) the purchaser acquires in effect only an equity of redemption. To perfect his title, he must pay off all prior liens; which, if not done within a reasonable time, will justify a sale under a first, or prior lien, and the purchaser at such second sale will acquire a good title.

(*Festerman* v. *Poe,* 2 Dev. & Bat., 103; *Isler* v. *Andrews,* 66 N. C. Rep., 552; *Grier* v. *Yontz,* 5 Jones, 371; *McKee* v. *Lineberger,* 69 N. C. Rep., 217; *Seawell* v. *Bank of Cape Fear,* 3 Dev., 279; *Haliburton* v. *Greenlee,* 72 N. C. Rep., 316, cited and approved.)

This was a CIVIL ACTION, in the nature of *Ejectment,* originally commenced in the Superior Court of Jones County,

and thence removed by consent to CARTERET County, where it was tried before his Honor, Judge McKOY, at August Term, 1875.

The following are the substantial points in the statement of the case accompanying the record, omitting only those which have no bearing whatever upon the points raised and decided in this court :

The plaintiff, in support of his title, introduced the transscript of a record of the Superior Court of Jones county, from which it appeared that at August Term, 1861, of the Court of Pleas and Quarter Sessions of Wayne county, a judgment was rendered in said court, in favor of one Benjamin Aycock, (use of B. M. Isler,) against F. B. Harrison, J. W. F. Harrison and W. A. Cox, for the sum of seven thousand four hundred and eighty-eight dollars, ($7,488,) and that execution regularly issued thereon, from term to term, until May term, 1866. The execution issuing from February term, returnable to the ensuing May term, 1866, was returned levied on the tract of land in controversy, 13th April, 1866. A *ven. exp.* was issued, returnable to August Term, 1866, on which was endorsed, " No sale on account of the Stay Law." The plaintiff in said execution thereupon, at the said August Term, 1866, moved the court for an alias *ven. exp.* which being refused, he appealed to the Superior Court; which also refusing his motion, he appealed to the Supreme Court. In this Court, the judgment of the Superior Court was overruled, and it was decided that the plaintiff was entitled to his alias *ven. exp.*

In 1868, the plaintiff Aycock, to the use of B. M. Isler, having transferred his case to the Superior Court of Wayne, procured the same to be docketed there, and sent a transscript thereof to the Superior Court of Jones, in which said judgment was docketed on the 30th day of November, 1868.

On said judgment, so docketed in Jones Superior Court, said plaintiff Aycock sued out a *ven. exp.*, with a special *fi. fa.*

clause, from said Court to the sheriff of said county, which was duly delivered to said sheriff by the clerk of said Court; and under this, the said *ven. exp.*, the sheriff sold the land, which is the subject of this controversy, on the 7th day of May, 1872, and the plaintiff in this action became the purchaser, receiving therefor a deed from one John Pearce, the said sheriff. The plaintiff then introduced a deed from one Arctus Gilbert to said F. B. Harrison, one of the defendants in the execution of Aycock, to the use of Isler, for the land so sold, bearing date 29th May, 1847; and further proved by a witness, that said Harrison and those under whom he claimed, has held possession of the same for thirty years prior to the 7th day of May, 1872.

In support of her title, the defendant introduced a transcript of the record of a judgment, from the Superior Court of Craven County, in favor of Wm. Foy against the said F. B. Harrison, for the sum of thirty-one hundred dollars ($3,100) and costs, rendered by said Court at its Fall Term, 1868; also a transcript of said judgment, docketed in the Superior Court of Jones County on the 10th day of November, 1868; and also an execution from the Superior Court of Craven, on said judgment, which was issued the 6th November, 1868, and levied on the said land, the subject of this controversy.

The Sheriff of Jones sold the land on the 2nd of January, 1869, whilst the said execution in favor of said Foy against F. B. Harrison, and a *ven exp.* from Jones Superior Court in the case of Aycock, before fully set out, and several other executions levied on the land, were in his hands, as proved by the Clerk of Jones Superior Court and one L. D. Wilkie; and the plaintiff in this action bid off said land at the sum of four thousand nine hundred and fifty dollars, ($4,950,) and insisted on crediting the execution of Aycock aforesaid, as the agent and attorney of the plaintiff therein, with the amount of his bid, and that on his paying the costs, he

further insisted that the sheriff should make him a deed for the land. This proposal the sheriff declined to accede to, assigning as his reason, that he had other executions in his hands against said Harrison, besides the two above named, all of which were levied at the same time with the Aycock execution on the land in dispute, amounting to three thousand or more; and that he had been advised by his counsel to demand and receive the cash from the purchaser, and return it to Court, and ask the advice of his Honor as to its proper application.

Upon the refusal of the bidder (the plaintiff in this action) to pay the amount of his bill in cash, the Sheriff at once re-sold the land, when D. D. Colgrove became the purchaser at the price of one thousand and sixty dollars, ($1,060.) When the sheriff offered the land for sale the second time, the plaintiff forbid the sale, stating that he had purchased the land, and whoever bought it would buy a law suit.

The defendant next introduced as evidence a deed from O. R. Colgrove, the sheriff of Jones, for the land, so re-sold to the purchaser, D. D. Colgrove, dated 2d January, 1869, in which he recited that he sold the land by virtue of the aforesaid execution of Foy against said Harrison. The copy of the last will and testament of D. D. Colgrove, deceased, devising the land to the defendant, Jennie Colgrove, was also introduced; it was further proved that the Sheriff, O. R. Colgrove, was also dead.

His Honor stated that the executions themselves were the best evidence (from the returns made thereon) of what the sheriff had done in pursuance thereof. That the executions must be introduced, or transcript of the same, or their loss must be shown, before parol testimony could be admitted. That the defendant had shown from a transcript that the executions were in the sheriff's hands, and no parol evidence

22

was necessary to prove that point, as it was sufficiently established by the transcript.

His Honor further held, that anything occurring at the sale, going to prove that the sheriff sold under the execution of Aycock, or any other material fact which occurred at the sale, might be proved by parol. The evidence showed that the executions of Aycock, Foy and others were in the hands of O. R. Colgrove, Sheriff of Jones County, at the time of the sale, at which D. D. Colgrove became the purchaser. That Thomas Wilcox, who was interested in the sale, approached Colgrove, the sheriff, while going from the sheriff's office to the place of sale, and that D. D. Colgrove was in company, but Wilcox could not say whether he heard the conversation or not, though he was near enough for that purpose, when Colgrove, the sheriff, said that he was going to sell under the Foy execution, and not under the other executions, which evidence was objected to by the defendant, but the same was admitted by the Court. The defendant introduced a deed, the recital of which shows that O. R. Colgrove, sheriff of Jones, sold the land in dispute under an execution in favor of Wm. Foy, and recited no other execution. Upon this the Court said that there was no evidence to go to the jury, showing that the sheriff had sold under the execution of Aycock and Harrison and others.

Thereupon the defendants' counsel agreed : That was then only a question of law, to be heard by the Court, and there was nothing to submit to a jury ; and asked the Court to instruct the jury :

1st. That *ven. exp.* issued from Jones Superior Court, on the said judgment of *Aycock*, to the use of Isler, v. *Harrison* and others, under which the plaintiff in this action purchased, was void for the reason that the Superior Court of Jones had no power to issue it ; but that it could have been issued by Wayne Court only, whence the *fi. fa.* in said case, which had been levied on the land, had been issued ; and

that the plaintiff in said judgment had waived his lien ac-
quired by his levy on the land, by docketing his judgment
in Jones County ; and

2d. That the sale by the sheriff of Jones to D. D. Colgrove,
under the execution in favor of Wm. Foy against Harrison
and the sheriff's deed, vested the title to the land in Col-
grove, and that the plaintiff could not recover.

His Honor declined to charge the jury as above prayed,
and instructed them, if they believed the evidence, the plain-
tiff was entitled to a verdict.

Verdict and judgment for the plaintiff, from which the
defendants appealed.

*Hubbard,* for appellants.
*Strange,* contra.

RODMAN, J.   It is admitted of course that the burden is,
on the plaintiff to show a title in himself to the land in
controversy.   This he claims to have done by the following
evidence, briefly stated :

A judgment in favor of *Aycock* v. *Harrison,* (former owner
of the land,) at August Term, 1861, of Wayne County Court.
An execution issuing thereon levied on the land, which levy
was kept alive by subsequent *alias* executions duly issued,
from term to term, until under the last of them the land
was sold by Pearce, sheriff of Jones, on the 7th May, 1872,
when plaintiff became the purchaser, and a deed from said
sheriff to the plaintiff.

If these were the facts fully and accurately stated, the
case for the plaintiff would be clear.   The defendant, how-
ever, attempts to break the chain of the plaintiff's title by
several objections, founded on facts not denied but omitted,
from the foregoing statement.   These objections we will
state and consider in succession.   Before doing so, however,
we will dispose of an objection to the plaintiff's title, which,

on examination, is seen to be based on a mistake about a date. It was said that the execution under which the plaintiff purchased on 7th May, 1872, was irregular, inasmuch as it was issued from the Superior Court of Jones, whereas it was required by the Act of 1871–'72, chap. 74, to be issued from the Superior Court of Wayne, where the judgment was originally obtained. The Act cited was ratified on 27th January, 1872. Section 3 contains a provision that all executions previously issued from either Court should be valid. The Act, by Bat. Rev., chap. 108, sec 3, went into effect on the twentieth day after its ratification. It is admitted that the execution was issued within that time.

I. The defendant says that although the plaintiff Aycock acquired a lien by his judgment in Wayne, and the subsequent proceedings thereon, which related back to the date of the judgment, (this being identical with the *teste* of the *fieri facias* under which the levy was made,) yet this lien was waived and lost upon the docketing of the judgment in Jones County, on 30th of November, 1868, and that the lien afterwards only had effect from that day. And that inasmuch as prior to 30th November, 1868, to-wit, on 10th November, 1868, a judgment in favor of *Foy*, plaintiff, v. *Harrison*, recovered at Fall Term, 1868, of Craven Superior Court, had been docketed in Jones County, this Foy judgment had a priority of lien over the Aycock judgment.

How it might be if the Aycock judgment *alone* had been docketed in Jones, and without any statement of, or reference to, the proceedings thereupon which gave to a *venditioni exponas* issued upon it, a lien relating to the date of the judgment, it is unnecessary to say. For in fact, the transcript from Wayne, entered upon the docket in Jones, contained an abstract of the several writs of execution from time to time, from which the relation of the lien back to the date of the judgment appeared. The effect of this statement was to inform all concerned of the prior date of the

lien, and to preserve its priority.   So that the Aycock judgment, although docketed after the Foy judgment, continued to have a priority over that judgment, and so far as appears over all others.

II. Defendant contends that D. D. Colgrove acquired a title to the land by his purchase at the sale by sheriff Colgrove on 2d January, 1869.   His argument is :

1. That the sale on the same day at which the plaintiff bid off the land, was avoided by the failure of the plaintiff to comply with the terms by paying the amount of his bid.

2. That upon such failure the sheriff had a right to resell immediately.

3. That the sheriff had a right to re-sell, and did in fact re-sell, both under the Aycock and the Foy executions.

4. That whether he actually sold under both, or under the Foy execution alone, the sale, when completed by a deed, as it was, passed the title of the defendant in the land to D. D. Colgrove, the purchaser—free from any lien or incumbrance.

5. Consequently, the subsequent sale under the Aycock execution on 7th May, 1872, when plaintiff purchased and obtained a deed, passed nothing, there being no estate left in the defendant on which it could operate.

On consideration of these propositions, the following observations have occurred to us :

1 and 2. It is plain that the plaintiff acquired no title to the land by his supposed purchase on 2d January, 1869, because he never obtained a deed.   By a rule on the sheriff to which all persons in interest were made parties, and upon proof that the Aycock execution had priority over all others then in the sheriff's hands, and that he (the present plaintiff) was authorized to apply his bid as a payment *pro tanto* on that execution, he might have obtained an adjudication of the Superior Court of Jones to that effect, and an order to the sheriff to enter such payment on the execution, and

to make a deed to the plaintiff, in which case the deed would have related back to the sale, and would thereby have avoided the sale to Colgrove. *Festerman* v. *Poe*, 2 Dev. & Bat., 103. This is substantially what was held in *Isler* v. *Andrews*, 66 N. C. Rep., 552. See also Herman on Executions' sec. 211, p. 325, and cases there cited.

A sheriff who sells under execution *may* take on himself to decide which one of several executions in his hands is entitled to priority of payment out of the purchase money. But such decision would be at his peril, and he is not required to make it.

It may appear clear to us now that Aycock, or the present plaintiff as his representative, was entitled to priority of payment. But it was a question not settled, and doubtful at the time of the sale in 1869, and the sheriff was entitled to payment of the plaintiff's bid, or to an adjudication of the Court establishing his priority, and in default thereof could re-sell immediately . See *Grier* v. *Yontz*, 5 Jones, 371 ; *McKee* v. *Lineberger*, 69 N. C. Rep., 217. What is said on this point in *Grier* v. *Yontz*, is in relation to a sale of personal property, but it is equally applicable to a sale of real estate.

III. Under what executions did the sheriff re-sell ? A plaintiff who has put an execution in the hands of a sheriff may withdraw it before it is so acted on that its withdrawal would be injurious to third parties. He may equally direct the sheriff not to act on it, which would be equivalent to withdrawing it. What the plaintiff in this case said and did after the sheriff refused to credit his bid on the execution, can be understood only as a direction to the sheriff to proceed no farther under the Aycock execution, which he claimed to be *functus officio*. To permit the sheriff to proceed to re-sell, under that execution, would have been to waive his claims as purchaser, which it is plain he did not intend to do. The sheriff, therefore, had no right to re-sell

under the Aycock execution, which was, in effect, taken out of his hands. And it appears that in fact he did not sell under it, for in his deed to Colgrove, he recites that he sold under the Foy execution, and refers to no other.

That the sheriff still held the Aycock execution in his hands, and that it was not actually taken from him cannot make any difference, if he had been directed not to re-sell under it, and in fact did not re-sell under it. *Seawell* v. *Bank of Cape Fear*, 2 Dev., 279.

IV. Taking it then that the sheriff sold under the Foy execution alone, what did the purchaser at that sale acquire?

The rule expressed in *Haliburton* v. *Greenlee*, 72 N. C. Rep., 316, is considered applicable. In that case it is said: "If a sale of land is made under a junior docketed judgment, the purchaser buys in effect only an equity of redemption; that is the title to the land on paying off the prior liens."

It is argued, however, that this case is not applicable, because in it there were two judgments docketed at different dates, and priority is expressly given by statute to the senior one, whereas in this case the Foy judgment was first docketed, and the prior lien of the Aycock judgment is a consequence of the law existing before the Code, and which was superseded by it. We do not consider that the Legislature intended to destroy antecedent liens, or that it could constitutionally do so. Perhaps it was not necessary to docket the Aycock judgment in Jones County at all. Its being docketed there in the form in which it was docketed, did no harm. The principle of the decision cited is not so narrow as is supposed by counsel. The reason of it reaches to every case of sale under a junior lien. It is immaterial how the prior lien was created, whether by mortgage, prior docketed judgment, or by execution and levy. The priority of lien is of the essence, the mode of its creation only an incident. It seems to us impossible to come to any other conclusion without injuriously affecting the prior lien. To

change it from a lien upon the land to a lien on the proceeds of the sale, would be injurious.

V. Colgrove was entitled to the land on paying off the Aycock execution, and he was entitled to a reasonable time for this purpose. Having permitted this time to pass without redeeming, the plaintiff was entitled to sell the land. This was held in *Haliburton* v. *Greenlee.* By his purchase the plaintiff acquired the title of the defendant in the execution, and is entitled to the possession against all persons coming in under him.

PER CURIAM.                            Judgment affirmed.