It was admitted that both parties claimed under the North Carolina Estate Company (Limited), and that the land in controversy had been conveyed to the company by deed, in June, 1886.
In response to issues submitted, to which there were no (703) exceptions, the jury found that there had been two execution sales of the land in controversy; that at the first sale, made 6 May, 1889, when the defendant George W. Brown purchased, the sheriff sold under four executions; that at the second sale, made 8 July, 1890, when the plaintiffs (or John Paalzow, under whom they claimed) purchased, the sheriff sold under only one execution, and that an execution issued on a judgment in favor of John Paalzow. The executions under which the first sale was made issued on judgments in favor of A. H. Wilson, the Shuford Hardware Company, Dunovant *Page 438 
McConnaughey and Brown McDowell, all against the North Carolina Estate Company, Limited.
The A. H. Wilson judgment was rendered in the Superior Court of Burke County on 4 March, 1889, in an action brought by him for the enforcement of two mechanics' liens, filed 16 July, 1888, against certain town lots in Glen Alpine, for work and labor done thereon. This judgment was for $359.60 and costs, and the same was declared a lien on said lots from 16 July, 1888, the date of filing said liens. The execution which issued on this judgment, 30 March, 1889, declared the same a lien from 16 July, 1888, on said lots, and ordered the sheriff to sell said lots to pay the same. The other three judgments were justices' judgments in attachments, and were declared to be liens upon the land in controversy and upon the Glen Alpine lots. The judgment in favor of Dunovant McConnaughey and the Shuford Hardware Company were both rendered the same day and transcripts issued and docketed the same day. In each of these cases a warrant of attachment was issued the same day and levied by the sheriff the same day, 24 January, 1889, upon the land in controversy and upon (704) the Glen Alpine lots. Judgments were rendered in these two actions on 22 February, 1889, and transcripts docketed in the Superior Court of Burke County, 25 February, 1889. The judgment in each of these actions was declared a lien upon the land in controversy and upon the Glen Alpine lots. Executions issued on these two judgments from the Superior Court of Burke County, on the Shuford judgment, 1 April, 1889, and on the Dunovant McConnaughey judgment, 1 May, 1889. The judgment in favor of Brown McDowell was rendered 6 April, 1889. The warrant of attachment had been issued, and the same was levied upon the land in controversy, on 8 March, 1889, and the judgment was declared an attachment lien on the said land and lots, and a transcript of said judgment was docketed in the Superior Court 1 May, 1889, and execution issued 1 May, 1889. Under executions issued on these four judgments the land in controversy was sold 6 May, 1889, and defendants purchased. There was no personal service of summons upon the North Carolina Estate Company, Limited, in any of these cases, but in all of them there was constructive service by publication. In three of them an attachment was levied upon the land in controversy and publication made thereof; in the other, a statutory lien upon the Glen Alpine lots and publication. At the sale, 6 May, 1889, when the defendants purchased under these four executions, the Glen Alpine lots were first sold, and realized $200, which was not sufficient to discharge the A. H. Wilson execution, which was the first lien thereon. At the second sale, made 8 July, 1890, when the plaintiffs purchased, the sheriff sold only under *Page 439 
one execution, issued from the Superior Court of Catawba County 8 March, 1890, on a judgment in favor of John Paalzow against the same company, rendered in said court at Spring Term, 1890, a transcript of which was received and docketed in Burke County, 10 March, 1890.
From the judgment rendered on the verdict for the defendants (705) the plaintiffs appealed.
"Due process of law" requires that service of process shall always be made. There are three modes in which this can be done:
1. By actual service (or, in lieu thereof, acceptance of service or a waiver of service by an appearance in the action). Whether actual service shall be made by reading the summons or notice to the defendant, or leaving a copy with him personally or at his usual place of residence, is for the Legislature to prescribe. The Code, secs. 214, 217, 597.
2. By publication of summons in cases in which it is authorized by law, in proceedings in rem. In these cases the Court already has jurisdiction of the res, as to enforce some lien or a partition of property in its control, or the like, and the judgment has no personal force, not even for the costs, being limited to acting upon the property.
3. By publication of the summons, in cases authorized by law, in proceedings quasi in rem. In those cases the court acquires jurisdiction by attaching property of a nonresident or of an absconding debtor, and in similar cases, and the judgment has no personal efficiency, extending no farther than its enforcement out of the property seized by attachment.
Proceedings in divorce are sui generis, as the judgment therein merely declares a personal status, and publication of the summons is allowed without the acquisition of jurisdiction by attachment of property, the court having jurisdiction of the person of the plaintiff. The Wilson judgment to enforce a mechanic's lien was a (706) a proceeding in rem, and service by publication was authorized by The Code, sec. 218 (4). In Pennoyer v. Heff, 95 U.S. 714, it is said: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or lien respecting the same, or *Page 440 
to partition it among different owners, or, where the public is a party, to condemn and appropriate it for a public purpose." This is cited and approved in Winfrey v. Bagley, 102 N.C. 515, and Long v. Ins. Co.,114 N.C. 465. In proceedings under this class — proceedings in rem
— it is not necessary, as in proceedings quasi in rem, to acquire jurisdiction by actual seizure or attachment of the property, but "it may be done by the mere bringing of the suit in which the claim is sought to be enforced, which in law (in such cases) is equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit." Heibeitter v. Oil Co., 112 U.S. 294. And as to this class of cases the statute prescribes publication of the summons, whether the defendant is a nonresident or a resident, whenever, "after due diligence, he cannot be found in the State." The Code, sec. 218 (4); Claflin v. Harrison,108 N.C. 157. His Honor, however, properly instructed the jury, as prayed, that a sale under the Wilson judgment could pass no title as to any of the property of the defendant in such judgment other than the property covered by the mechanic's lien.
The plaintiff could not collaterally attack the three justice's judgments, under which the sale of 6 May, 1889, was alleged to have been made, for irregularity, but he has the right to insist that they are void if there was no service of process in such cases in any mode (707) prescribed by law, having acquired his own rights by purchase under a junior judgment. The defendant in such justice's judgments was not served personally, and, being a resident of this State,i. e., a domestic corporation, could not, till the act of 1889, be served by publication, except in the instances mentioned in The Code, secs. 218 (2), 218 (4). Laws 1889, ch. 108, extended these instances by providing that where the defendant is a corporation created by or organized under the laws of this State, and no officer or agent thereof, upon whom service of process can be made, can after due diligence be found in the State, and that fact is duly made to appear by affidavit to the satisfaction of the clerk of the Superior Court of the county in which such process was issued, such clerk shall grant an order that service of such process may be made by publication in the manner therein provided. This act was ratified 13 February, 1889. Until the passage of this act there was no means provided for service of process against a domestic corporation whose officers and agents could not be found. It was simply a casus omissus. Service could be had upon nonresident defendants and corporations by publication of summons when personal service could not be had, provided jurisdiction was procured by attachment of property [The Code, secs. 218 (1), 218 (3); Long v. Ins.Co., supra], and against residents and *Page 441 
nonresidents alike (when personal service could not be made), to enforce a lien or interest in property in this State, and in actions for divorce [The Code, secs. 218 (4), 218 (5)], and against residents of the State (who could not after due diligence be found) when they had departed from the State with intent to defraud creditors or to avoid service of summons, or kept themselves concealed in the State with like intent [The Code, 218 (2)], in which case, also, attachment of property is the basis of the jurisdiction. The Code, sec. 349. There can be no question that the State has the right to prescribe that service upon parties residing here can be made by publication when (708) such parties cannot after due diligence be found, not only in those cases in which it can be averred by affidavit that they have departed this State or have concealed themselves herein with intent to defraud creditors or avoid service of summons, but also in cases where such intent cannot be averred; and certainly it is competent for the Legislature to provide that, as to a corporation created by it, if no officer or agent of such corporation can be found in the State, then service can be had by publication; otherwise creditors would have no redress if a domestic corporation should keep the names of its officers concealed or should elect officers living outside of the State. It might, as in this case, own large bodies of land, and creditors would be powerless to secure service of process, and even stockholders could not begin proceedings, in a proper case, for the appointment of a receiver. But till the act of 1889 there was such defect, and two of the justice's judgments are void, because they were taken 22 February, 1889, and there was not the service by advertisement for four weeks, under authority of the act of 1889, since that act was not ratified till 13 February, 1889. The other judgment was taken 6 April, 1889, and in the absence of the transcript of the proceedings therein the presumption of law is that it is regular in all respects, including service, but it appears that there was no personal service of the summons; and though the act of 1889 authorized publication of the summons against a domestic corporation whose officers cannot be found in the State, unfortunately the Legislature omitted to amend the attachment law (The Code, sec. 349) so as to authorize an attachment of the defendant's property in such case, and, as we have seen, substituted service in such cases can only be based upon the seizure of property, it being (709) a proceeding quasi in rem. No attachment having been authorized by law, the proceeding was merely in personam, and jurisdiction could not attach by mere publication, and the attempted service in that mode was insufficient for any purpose. Winfree v. Bagley,supra. The act of 1889 was needed to supply a casus omissus, and the authority of the Legislature to enact it cannot be controverted; but, *Page 442 
doubtless by an inadvertence, the act did not amend the attachment law, so as to give a basis for jurisdiction to proceed against the property of the defendant in such cases, and the courts cannot supply the defect in the act. Recourse must be had to the Legislature.
While it is a good and convenient practice to set out the grounds of exception to the judge's charge on the motion for a new trial before him, to the end that on fuller reflection he may have the opportunity to correct the errors, if any, committed by him, and save the parties the delay and expense of an appeal, this is not absolutely required, and it is sufficient if the exceptions to the charge are set out in the appellant's statement of the case on appeal. McKinnon v. Morrison, 104 N.C. 364; Lowe v. Elliott,107 N.C. 718; Blackburn v. Ins. Co., 116 N.C. 821; Supplement to Clark's Code, p. 64.
It is not necessary to notice the exceptions made, other than those involved in the above discussion; but as the point was earnestly debated before us, we may note that the sixth instruction given by the court was erroneous; for, although the Paalzow judgment was a junior judgment — conceding for the argument that the three justice's judgments were valid — the holder of the senior judgments had no power to forbid a sale under the junior execution, and the purchaser at a sale under an execution issued upon a junior judgment gets the (710) title of the defendant in the execution, subject only to the encumbrance of the senior judgments. Worseley v. Bryan,86 N.C. 343; Halyburton v. Greenlee, 72 N.C. 316; Isler v. Colgrove,75 N.C. 334. If the executions on the senior judgments are in the sheriff's hands at the time of the sale, the purchaser gets full title, and the lien of the senior judgments is transferred to the proceeds of the sale. Cannon v. Parker, 81 N.C. 320; Gambrill v. Wilcox, 111 N.C. 42.
New Trial.
After the opinion in this case was handed down, the plaintiff (appellant) moved to modify the judgment at this term.