Nash, C. J.
 

 This case is now before us for a final hearing. At August Term, 1849, 8 Ire. Eq. 278, the interlocutory order, dissolving the injunction which had been granted to stay the collection of the money due upon the bonds, given by the plaintiffs for the purchase money of the land, was affirmed. The original bill sought to set aside the contract, upon the grounds : first, that the defendants committed a fraud upon the plaintiffs in the sale, by representing that the land contained a valuable gold mine ; and secondly, because bye-bidders or puffers were employed by the defendants, without the knowledge of the plaintiffs,
 
 to
 
 run up the land, whereby they were induced to bid for it a price far beyond its value. In their answers, the defendants deny the first ground of fraud ; and the evidence in the cause does not sustain the allegations of the bill. Upon the second charge, the defendants admit that they did employ
 
 Preston Long to
 
 bid for them, without any intent to defraud the persons who were disposed to bid, but simply to prevent the land from being sacrificed. There is some contrariety of opinion on this question in the English Common Law Courts and those of Chancery. In
 
 Bexwell
 
 v.
 
 Christie,
 
 Cow. 395, Lord Mansfield
 
 declared
 
 — “ It was a fraud upon the sale and upon the public,” to employ a puffer or bye-bidder to run up the property, upon the principle that good faith ought to be the basis of all dealings between man and man. That case was followed by
 
 Howard
 
 v.
 
 Castle,
 
 6 T. R. 643. That was an action on the case to recover damages for a refusal on the part of the defendant to complete a sale — there having been a re-sille in consequence of such refusal. On the trial, it was shown
 
 *135
 
 that the defendant, after he had bid .off the property at the sale, discovered that he was the only real bidder — all the others having-been puffers employed by the plaintiff. The defendant, upon making this discovery,
 
 immediately
 
 refused to comply with the contract. Lord Kenyon expressed in warm terms his admiration of the noble principles of morality and justice, announced by Lord Mansfield, and winds up by
 
 saying
 
 — l< he met the question fairly, and made a precedent which I am happy to follow. ’ ’ Ashurst, Justice, in a single sentence, expresses his opinion :—
 
 “
 
 If one person is induced to bid at an auction sale, without exercising his own judgment, and that by the owner himself, the parties do not meet on equal terms.” This is of course said in reference to the case then before the Court. On the other hand, Lord Rosselyn, in
 
 Conolly
 
 v.
 
 Parsons,
 
 3 Ves. Jr. 625,
 
 in note,
 
 declares that it was no objection to a sale by auction, that bye-bidders were employed, and expresses his disapprobation of both the cases at law referred to ; and in reference to the latter, says,
 
 “
 
 it must have turned upon the fact that there was no real bidder, and
 
 the person refused instantly.”
 
 Judge Pearson, in delivering the opinion of the Court on the former argument, observes, upon the above authorities — “ we are not called upon to decide the question definitively, for, be it either way, it is certain that a purchaser who wishes to avail himself of such an objection, must do so as soon as the fact comes to his knowledge.” When the case went back to the Court of Equity, the plaintiffs, by permission of the Court, amended their bill. In it they stale, that
 
 “
 
 at the time they purchased the mine, and gave their bond, the fact of the bye-bidding was entirely unknown and unsuspected by them ; and they did not come to the knowledge of it, or have cause to suspect it, until long after the sale.” If the plaintiffs had made good their allegation by their proofs, it would have become necessary for the Court to decide whether the facts disclosed in the case of the bye-bidding were faudulent or not; but they have not done so. The only witnesses who speak to this point are Gen. Bynum and James Weaver. The former states, that after the plaintiffs had abandoned the mine, and after the action was brought on the bond, Col. Jefferson, the agent, told him that a bye-bidder was employed at the sale ; and that he communicated
 
 *136
 
 the fact to one of the plaintiffs, Mr. McDowell, a short time before the bill was drawn, but sometime before it was filed. Mr. Weaver states that he was the overseer of the plaintiffs in working the Simms mine, and that he commenced working in October, 1845 ,• and that they worked there from five to seven weeks— when the hands were removed to another mine of the plaintiffs, half a mile distant, where he worked six months. That while working on the Simms mine, he boarded at the house of A. H. Simms, one of the defendants, who told him that Long was employed as a bye-bidder ; and that he communicated this fact to Mr. McDowell, either while he was working in the Simms mine, or soon after he went to the Collins mine, or it may have been six months after. The bill was filed January 21st, 1848 — for that is the date of the Judge’s
 
 fiat
 
 for the injunction. We wish now to ascertain from this testimony, as near as we can, when the plaintiffs received their first information that a bye-bidder had been employed. Weaver has given three starting points : The first is, while he was working in the Simms mine. He went there the 24th of October, 1845, and remained from five to seven weeks, say seven ; and let us take the medium time — that will bring us to the 29th November, 1845. If he communicated the information at that time, then two years and two months elapsed before the bill was filed. Let us now take the six months — after the removal of the hands to the Collins mine j and there will have passed a year and six months before the plaintiffs complained. This is the shortest time, according to this witness, which passed, after the information was communicated to the plaintiff, before they commenced operations. This we think was too long. We are inclined to think it was whilst the witness was working at the Simms mine that he communicated the information to Mr. McDowell; for he was in the employment of the plaintiffs, and was requested by McDowell to get information from the defendants upon the subject of the sale of the mines. If that was the fact, it makes the case still more conclusive against the plaintiffs on this point. For as they received the information, if they wished to rescind the contract, they ought, without any unnecessary delay, to have communicated to the defendants their wish to do so. Instead of so doing, they still continued to work the mine, and to
 
 *137
 
 test its
 
 value
 
 — “ so that, if it turned out not to be rich, they might fall back upon the objection that there was a bye-bidder ” — as observed by his Honor Judge Pears ow, in delivering the former opinion, above referred to.
 
 u
 
 There must be good faith on each side, and as soon as a purchaser finds out there has been bye-bidding, he must make his election.” It is said that the plaintiffs were entitled to take time to ascertain the facts, before they could be required to involve themselves in a lawsuit. That is true ; but as soon as they discover the fact of the bye-bidding, they must make their election, and notify the vendors of their wish to annul the contract on that ground. By so doing, they put it in the power of the latter to rescind, and thereby enable themselves to look oitt for another purchaser ; and not, as in this case, keep the property twelve or eighteen months, and then ask for a cancellation. A plaintiff in Equity recovers upon the allegations of his bill; and only when they are supported by sufficient evidence. Here the allegation of the time when they discovered tire alleged fraud is too indefinite. « Until long after the sale ” conveys no precise idea as to time, and no dates are given ; and according to the testimony of Weaver, viewed in any aspect, the plaintiffs delayed too long in making their election.
 

 Per Curiam. Bill dismissed with costs.