## DAVIS v. KEEN.

(Filed November 7, 1906).

*Issues—Harmless Error—Slander of Title—Exceptions— Statement of Evidence—Instructions—Deeds—Cancellation—Mortgage Sale—False Representations as to Title— Deterring Bidders—Inadequacy of Price—Evidence of Fraud.*

1. Where the verdict on an issue was in the appellant's favor, no harm was done by the Court's amendment to the form of the issue, even if it was improper.

2. Where an issue as submitted substantially followed the allegation of the complaint, an exception to the refusal of the Court to add thereto the words "as alleged in the complaint" is without merit.

3. Where the plaintiffs claim no damages for any injury done by smirching their title, but ask for equitable relief, in that they seek to set aside a mortgage sale and to cancel the deed to the defendant because of his fraudulent conduct in suppressing the bidding, it is not an action for slander of title.

4. An exception "That the Court failed to state in a plain and correct manner the evidence in the case and to declare and explain the law arising thereon" is too general and cannot be sustained.

5. Any omission to state the evidence or to charge in any particular way, should be called to the attention of the Court before verdict, so that the Judge may have opportunity to correct the oversight. A party's silence will be adjudged a waiver of his right to object.

6. In an action to set aside a deed to the defendant where it appeared that plaintiff's ancestor owned the land which he mortgaged, and that the sale was under the mortgage and that the defendant by false representations as to the state of the title, induced others to desist from bidding so that he could buy the land at an inadequate price, which he did, a court of equity will grant relief.

7. Inadequacy of price when coupled with any other equitable element, even though neither, when considered alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties.

8. A sale at auction is a sale to the highest bidder, its object a fair price, its means competition. Any conduct practised for the purpose of stifling competition or deterring others from bidding, or any means such as false representations or deception employed to acquire the property at less than its value is a fraud, and vitiates the sale.

9. While it is not required that the mortgagee should be present at the sale, yet his absence, as well as any other relevant fact which tends to show the true situation at the time the bid and purchase were made and the circumstances under which they were made, may be considered by the jury upon the question of fraud.

ACTION by Sylvester Davis and others against J. R. Keen, heard by *Judge G. S. Ferguson* and a jury, at the August Term, 1906, of the Superior Court of DAVIDSON.

The plaintiffs seek in this action to set aside a sale made under the power contained in a mortgage from Calvin Davis to Beek & Foust, at which sale the defendant Keen became the purchaser. The plaintiffs attacked the sale on several grounds, but in this appeal only one need be considered, as the appellant's assignment of error is confined to the second issue. The allegation of the complaint, with respect to that ground of attack, is that "the defendant Keen slandered the title of the said Calvin Davis, the mortgagor, and of the plaintiffs and his co-defendants, Matthew and George Henry Davis, by publicly announcing to the purchasers gathered for the sale that Calvin Davis and the plaintiffs and Matthew and George Henry Davis (his co-defendants) had no deed for the property being sold at the time, and that, thereby, the said tract of land, now claimed by him, and which is well worth the sum of $300, brought only the sum of $45, which was bid by the said Keen, and for which sum a deed was made to him." The plaintiffs and the defendants Matthew and George Henry Davis are the heirs of Calvin Davis, the deceased mortgagor. The issues, with the answers thereto, are as follows: "1. In advertising and selling the lands of Calvin Davis under the mortgage described in the complaint,

142—32

did the defendant Keen act as agent for the mortgagees, R. L. Beek and T. W. S. Grimes, administrator of T. W. Foust? Ans.: No. 2. On the day of sale under the mortgage of Calvin Davis, described in the complaint, did the defendant Keen slander the title of plaintiffs and of their deceased ancestor to the lands in dispute, and thereby cause it to bring a less price than its real value? Ans.: Yes. 3. What price did the land bring on the day of sale? Ans.: $45.. 4. What was the true value of the land on the day of sale? Ans.: $250. 5. Did the defendants Beek and Grimes, in their deed to defendant Keen, follow the description and boundaries set out in the mortgage from Calvin Davis to Beek & Foust? Ans.: Yes. 6. At the time of the execution of the mortgage from Calvin Davis to Beek & Foust, or at any time afterwards, was Calvin Davis the owner of the lands described in the deed from defendants Beek and Grimes to defendant Keen? Ans.: Yes." The defendant Keen objected to the form of the second issue upon the ground that the Court should have added thereto the words "as alleged in the complaint." The issue, if thus amended, would be identical with the second issue tendered by the said defendant. The Court refused so to amend the issue, and the defendant Keen excepted. The evidence pertinent to the second issue was as follows: "T. E. Dorsett testified: "As I recollect, Keen came and asked me to sell the land; that it was a little sale and he wanted me to auction it. After the sale he paid me twenty-five cents and I gave him a receipt. I asked him (at the sale) to read the advertisement, as it was in his writing. Cannot say whether I had the notice of sale in my hands or not. T. W. S. Grimes, administrator of the deceased mortgagee, lives in Thomasville, and R. L. Beek, the surviving mortgagee, lives in the country. Don't recollect that he told me that Grimes and Beek wanted me to sell the land. I sold to the highest bidder, and Keen bid it in at $45. Don't remember number of people present."

DAVIS *v.* KEEN.

T. W. S. Grimes testified: "The mortgage was given by Calvin Davis to Beek & Foust in 1901 to secure $5, and it was in the handwriting of Keen. We could not collect the debt and decided to foreclose. Asked Keen to write the advertisement, and he did so. Saw him on Saturday before the sale and asked him if it was necessary for me and Beek to go to the sale, and he replied that he did not know, that he was going on some business. I asked him to see the Sheriff and have him sell the land for us, and he said he supposed he could. I told him to bring the report of the sale when he came back and we would make the deed to the purchaser. He brought back a statement showing the amount bid and different items of expense, among which is a charge of one dollar for advertising sale and also one dollar for writing the deed, retained by himself out of the proceeds of the sale. Keen wrote the deed after the sale."

W. O. Burgin testified: "I spoke to Keen that morning about the sale, and he told me that there was something wrong with the title. I reckon what he said kept me away from the sale. If the title was all right I thought the lot was worth $100. If there was one acre it was worth $200. I wanted to buy it for speculation, and would have gone to the sale if Keen had not told me the title might not be good. My recollection is that he said he was going to see about the sale. I think I asked him about the title and he said the title might not cover the lot. I had looked at the lot. There has been litigation about the title ever since the sale."

Z. B. Morris testified: "I was at the sale. Dorsett and Keen came out on the court-house steps. Keen read a paper, and, to the best of my recollection, handed it back to the Sheriff. Some one in the crowd asked about the title, and, as I recollect, Keen said there was no deed to the land, or something to that effect. I went to the sale expecting to bid, but did not bid, as I was afraid of the title, after Keen's statement was made."

M. P. Murphy testified: "I was at the sale and heard Keen talking in the Sheriff's office before the sale. He talked like it might be a good while before one could get title and might be a long while. I went there to bid, but after hearing what Keen said, I did not bid. The deed to Keen from the mortgagee covers all the land. Keen said he reckoned the mortgagees would make such title as they could, and added, that sometimes you could get a good title and sometimes you couldn't."

The value of the lot was shown, and there was evidence that the heirs of Calvin Davis did not know of the sale.

The defendant Keen testified in his own behalf, and the material part of his testimony was as follows: "Some one asked me if the parties would make a warranty deed, and I said I supposed they would make as good a deed as they could. They asked me about the title, and I told them I understood some one claimed part of the lot and that I had never seen any deed. It was the truth that I had never seen any deed, and I had heard parties claimed part of the land. At the depot on the morning of the sale Burgin asked me about the land and title, and I told him the title was uncertain to part of the land. So I understood it was, and I only gave the rumor." It was admitted that Calvin Davis was the owner of the land described in the pleadings at the time the mortgage was made to Beek & Foust. The Court charged the jury as follows: "As to the second issue, plaintiffs allege that defendant Keen, at the sale, slandered the title to the land, and thereby caused the land to bring less than its true value; that said Keen stated at the sale that Calvin Davis had no deed for the land. Defendant Keen denies that he slandered the title or made the statement alleged. Now it is for you to say from the evidence how this is. [Did defendant Keen falsely and with the purpose of deterring others from bidding at the sale, state that Calvin Davis had no title to said land and thereby cause it to bring, at the sale, less

than its true value? If you so find from the evidence, by
the greater weight of the evidence, you will answer the second
issue 'Yes.' If you fail to find from the evidence, by its
greater weight, that he did so state and thereby cause the
land to bring less than its value at the sale, then you will
answer this issue 'No.']." Defendant Keen excepted to
that part of the charge in brackets. The Court also charged
the jury as to the other issues, and no exception is made to
his charge as to them. The defendant Keen moved for a new
trial upon the following exceptions: "1. The failure of the
Court to submit the issues proposed by this defendant.
2. The submission of the second issue in the form adopted
by the Court. 3. That the Court failed to state in a plain
and correct manner the evidence in the case and to declare
and explain the law arising thereon. 4. There was no evi-
dence that the statements made by the defendant J. R. Keen
at the sale about the title were false, and the Court therefore
erred in instructing the jury that if Keen falsely stated that
Calvin Davis had no title to the said land, and thereby caused
it to bring less than its real value, they will answer the second
issue 'Yes.' " The motion was overruled and the defendant
Keen excepted. Judgment was entered upon the verdict and
an appeal taken by the said defendant.

*J. R. McCrary* for the plaintiffs.
*E. E. Raper* for the defendant.

WALKER, J., after stating the case: The Court submitted
the first issue in practically the same form as the one pro-
posed by the appellant, the introduction of the word "adver-
tising" being proper under the circumstances. The verdict
on that issue was in his favor, so no harm was done by the
Court's amendment, even if it was improper.

The addition of the words "as alleged in the complaint" to
the second issue, would not have essentially altered its mean-

ing, as issues in contemplation of the law have reference to the pleadings and are based upon them. The issue as submitted substantially followed the allegation of the complaint, as the effect of the latter is to charge that the appellant disparaged the title for the purpose of deterring bidders and preventing fair competition. It can make no difference what particular words are used to express the idea, for it all comes to this, that the appellant has committed a fraudulent act, so that he has secured an advantage to which he is not fairly entitled, and the law will not stop to inquire by what name it should be called.

The case was argued before us as if it were an action for slander of title; but it is not. The plaintiffs claim no damages for any injury done by smirching their title; they ask, on the contrary, for equitable relief, in that they seek to set aside the sale and to cancel the deed because of the fraudulent conduct of the appellant in suppressing the bidding. The assertion of the appellant at the sale, that there was no deed, could imply nothing else than that the title was defective, and that evidently was the construction placed upon it by those who intended to bid at the sale. He intended to impugn the title by insinuation if not by a direct attack upon it. *Cardon v. McConnell,* 120 N. C., 461, does not, therefore, apply.

The third assignment of error is too general and cannot be sustained. Besides, any omission to state the evidence or to charge in any particular way, should be called to the attention of the Court before verdict, so that the Judge may have opportunity to correct the oversight. A party cannot be silent under such circumstances and, after availing himself of the chance to win a verdict, raise an objection afterwards. He is too late. His silence will be adjudged a waiver of his right to object. The subject is fully discussed in *Simmons v. Davenport,* 140 N. C., 407.

The first three assignments of error are therefore overruled.
The fourth and principal assignment is equally untenable.
It was admitted that Calvin Davis owned the land which he
mortgaged to Beek & Foust. The sale was made under the
power contained in the mortgage, and the substance of the
evidence is that the appellant, by false representations as to
the state of the title, induced others to desist from bidding,
so that he could buy the land at a grossly inadequate price,
which he did. It is impossible to read the testimony with-
out coming to the conclusion that the appellant intended what
he said to those who proposed to buy should have the effect
that it did, so that the sale would be chilled or the bidding
stifled and he thereby would be enabled to get the land for
little or nothing. This was a clear attempt to perpetrate a
fraud, as the law views it, and a court of equity will not per-
mit it to go unrebuked. It may be said generally that mere
inadequacy of price, independent of other grounds of relief,
will not invalidate a sale, but it is a cogent circumstance to
be.considered by the jury when it appears, in connection with
it, that there has been unfairness or that an undue advantage
has been taken or that there has been any other inequitable
conduct, and a court of equity will readily seize upon any
such incident as a ground of relief when the property has sold
for a price so low as to result in hardship. It is plainly just
that it should interpose in such a case. Whether in any case,
if the inequality between the price and the real value of the
land be so great "as to shock the conscience and confound the
judgment of any man of common sense," the Court will inter-
pose, we need not inquire. *Judge Nash* said in *Potter v.
Everitt,* 42 N. C., 152, that "mere undervalue is no ground
for setting aside a contract, unless it be such as amounts to
apparent fraud, or the situation of the parties be so un-
equal as to give one of them an opportunity of making his own
terms." In more recent cases this Court has expressed a
doubt as to whether inadequacy of price, nothing else appear-

ing, is sufficient ground upon which to invoke the aid of a court of equity. *Trust Co. v. Forbes,* 120 N. C., 355; *Monroe v. Fuchtler,* 121 N. C., 101; *Osborne v. Wilkes,* 108 N. C., 651. See, also, 28 A. and E. Enc., 813; *Meath v. Porter,* 9 Heisk., 224; 2 Jones on Mortgages (6 Ed.), sec. 1915. But we do not have to go far to find abundant authority for the position that such inadequacy, when coupled with any other inequitable element, even though neither, when considered alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties. 17 A. and E. Enc. (2 Ed.), 1003. As, for example, when there has been a resort to any method for the purpose of unduly inflating or depressing the price. "A sale at auction is a sale to the highest bidder, its object a fair price, its means competition. Any agreement to stifle competition is a fraud upon the principles on which the sale is founded." *Smith v. Greenlee,* 13 N. C., 126. Free and fair competition being the very essence of such a sale, the principle just stated must necessarily apply to all cases where any means, such as false representations or deception, have been unduly employed to subvert this principle and acquire the property upon unjust terms. The reports are full of analogous cases. *Brodie v. Seagraves,* 1 N. C., 96; *Morehead v. Hunt,* 16 N. C., 35; *Goode v. Hawkins,* 17 N. C., 393; *McDowell v. Simms,* 41 N. C., 278; *s. c.,* 45 N. C., 130; *Ingram v. Ingram,* 49 N. C., 188; *Dover v. Kennerly,* 44 Mo., 145. "In all public sales, whether made by a private individual as an auctioneer, or by an officer of the law as a sheriff, under an execution, the object is to secure to the person whose property is sold, a fair price, and to the creditor satisfaction of his debt. Puffing or by-bidding is a fraud on the vendee, as it has the effect of enhancing the price upon him, and any agreement not to bid, made for the purpose of paralyzing competition, is a fraud on the vendor, and vitiates the sale." *Bailey v. Morgan,* 44 N. C., 356. Sugden puts a case like ours and

says, if a purchaser by his conduct deters others from bidding, the sale will not be binding, and cites the barge case, *Fuller v. Abrahams,* 3 Broad. & Bing. (7 E. C. L.), 116, which is in principle similar to the case under consideration. 1 Sugden Vend. and P., p. 30. Still more like this case is *Fenner v. Tucker,* 6 R. I., 551. See, also, 2 Jones on Mort. (6 Ed.), secs. 1912, 1910, 1911. "A purchaser who is guilty of any fraud, trick or device, the object of which is to get the property at less than its value, will not be permitted to enjoy the fruits of his purchase so obtained." Sec. 1912. It is not required that the mortgagees should be present at the sale, for they can execute the power by an attorney duly appointed for the purpose of making the sale. *Parker v. Banks,* 79 N. C., 480; but their absence, as well as any other relevant fact which tends to show the true situation at the time the bid and purchase were made and the circumstances under which they were made, may be considered by the jury upon the question of fraud.

When we examine the facts of this case, even those that are not seriously controverted, we find little or no difficulty in discerning the true nature of this transaction. It appears that the mortgage was made to secure a debt of five dollars; that the sale, though it may have been duly advertised, was made without the actual knowledge of the beneficial owners of the property, who are the heirs of the mortgagor. The mortgagees, themselves, were not present at the sale; the defendant Keen, while he did not represent them as agent, in the sense that he was authorized to act for them at the sale, and therefore their *alter ego,* seems to have taken a very active part in the conduct of the sale, and the jury have found, as will appear by the verdict, when construed in the light of the evidence and the charge of the Court, that he falsely impeached the title of Calvin Davis for the purpose of stifling competition and buying the land at a price below its real value. There can be no doubt that he looked upon this land

with a covetous eye, and was willing to seize the opportunity presented of gratifying his cupidity. It is of little or no importance whether he said enough to make him liable in damages for slander of title, for if he accomplished his purpose by other evil means or by artifice just as effective, it is quite sufficient for a court of equity to require a restoration by him of what he has thus wrongfully obtained. The sale was anything but a fair one, and it would be a reproach to the administration of justice if it were permitted to stand. One of the most important functions of a court of equity is to afford relief in just such cases. Everything in the case strongly appeals to the conscience of the Court in behalf of the plaintiffs and clearly entitles them to its protection.

We think the case was in all respects correctly tried.

No Error.