S A. SHARPE v. FANNIE WILLIAMS and ALICE MARCH.

*Judgment — Execution Sale — Purchaser — Fraud.*

1. Before the adoption of the Code of Civil Procedure, the levy of a senior execution on land did not prevent a levy and sale under a junior execution and a purchaser at such sale obtained a good title. The Code has constituted a docketed judgment a *lien* on the real property of the judgment debtor, and a purchaser at a sale under a junior docketed judgment acquires the estate subject to the lien of any prior docketed judgment.

2. A judgment obtained before the adoption of the Code, if docketed within a reasonable time thereafter, acquired a lien upon the real estate of the judgment debtor. Such judgments were not *prejudiced* by the adoption of the Code.

3. The "minimum" price at a sale for taxes under the U. S. Revenue Laws, is the least price which, in the opinion of the Collector, the property ought fairly to bring.

4. Where A, with intent to defraud his creditors, furnished money to his daughters (being indebted to them at the time) with which to purchase his land at execution sale, they not being parties to his fraudulent purpose and not buying for his use, and the daughters purchased the land for a fair value ; *H ld*, that the daughters obtained a good title.

*Hervey* v. *Edmunds*, 68 N. C., 243 ; *Woodley* v. *Gilliam*. 64 N. C., 649 ; *Isler* v. *Colgrove*, 75 N. C., 334 ; *Worthy* v. *Caddell* at this term, cited distinguished and approved.)

CIVIL ACTION for the recovery of Real Estate, tried at Fall Term, 1875, of CABARRUS Superior Court, before *Schenck, J.*

The suit was brought in the Superior Court of Davie county to recover the possession of two tracts of land, and certain lots in the town of Mocksville    Upon affidavit of the plaintiff the cause was removed to Rowan county, and thence upon affidavit of the defendant, to Cabarrus county.

The facts as stated in the opinion of this Court, and those found by the jury upon issues submitted, are deemed sufficient to an understanding of the points decided

*Findings of the Jury :*

1. The judgments were had and made to defraud the creditors of W. B. March.

2. The defendants were not parties to this fraudulent purpose.

3. W. B. March furnished the defendants (his daughters) with the money to buy the lands sold by the Collector for taxes, with intent to defraud his creditors.

4. The defendants were not parties to this fraudulent purpose.

5. There was no agreement between W. B March and his daughters, that they should buy the lands for his, March's use, and to defraud his creditors.

His Honor was of the opinion, under the ruling in *Dobson* **v.** *Erwin* 1 D & B . 569. that the sale was absolutely void and passed no title to defendants, and adjudged that plaintiff recover possession of the lands, damages and costs.   Appeal by defendants.

*Messrs  Wilson & Son, R  F. Armfield, V. H  Bailey* and *W. J. Montgomery* for the plaintiff, submitted :

1. The judgments in the State Courts were not transferred as the law required, nor revived so as to render them capable

of a transfer. *Brem* v. *Jamison*, 70 N. C., 563; *Halyburton* v. *Greenlee*, 72 N. C., 316 ; *C. C. P.*, § 403 *et seq.*

2. The Collector's deed void, under the provisions of the Internal Revenue Law, § 30.

3. As the jury found that the bid was paid with the money of W. B. March, the sale was void. *Dobson* v. *Erwin*, 1 D. & B , 569.

*Mr. J. M. McCorkle*, for the defendants, submitted :

1. There is nothing in the Code requiring judgments to be docketed where levies have been made. Docketing under the Code creates the lien—here it is had already. It is more than a lien *Bat Rev.* ch. 17. § 254.

2. Levy and *ven. ex* placed property *in custodia legis*, and if execution issue on dormant judgment, debtor alone can take advantage of it. *Boyd* v. *Murray*, Phil. Eq., 238 ; *Murdre* v. *Felton*, 1 hil Law, 279.

3. Validity of sale not to depend on March's intention alone. The fraud must enter into and affect the contract. *Lassiter* v. *Davis*, 64 N. C., 4 8 ; *Rose* v. *Coble*, Phil. Law, 517 ; *Stone* v. *Marshall*, 7 Jones, 300.

RODMAN, J. This was an action to recover several pieces of land, one of which was a cert in lot in Mocksville.

The whole property belonged to William B. March. The plaintiff claims title under a purchase at a sale under execution against said March in September, 1869. The judgment was recovered in the Superior Court of Davie county in April. 186., and was duly docketed in that county.

By his purchase the plaintiff obtained all the legal estate which said March had in the lands at the docketing of the judgment. The question to be determined is, did March have any estate at that date? The defendants say he did not. on several grounds :

1st. At Spring Term, 1853, of Davie Superior Court, one Foster recovered a judgment against said March. At the

same term one Welch also recovered judgment against March. No execution appears to have issued upon either of these judgments until June, 1868, when executions did issue which were levied on all the lands in controversy; and in 1871 the lands were sold under writs of *venditioni exponas* issued on those judgments, and purchased by defendants, who received deeds from the sheriff

It is clear that the mere levy of these executions in June, 1868, did not divest the estate of March, so as to invalidate the sale at which plaintiff purchased in September, 1869. Neither did the sale under executions in 1871 have effect by relation to invalidate such sale. That the judgments were dormant when executions issued on them was immaterial, as no one can take advantage of that irregularity except the defendant in the execution. *Hervey* v. *Edmunds*, 68 N. C. 243.

But it was settled law until the change made by the adoption of the Code of Civil Procedure in August, 1868, that the levy of a senior execution on land did not prevent a levy and sale under a junior execution, and that although the plaintiff in the senior execution might be entitled to the proceeds of the sale, the purchaser at the sale under the junior execution got a good title to the estate of the defendant. *Woodley* v. *Gilliam*, 64 N. C. 649.

The Code altered this with regard to docketed judgments and made them a *lien* on the real property of the defendants, and not merely a right to preference in payment from the proceeds of the sale of such property. So that on a sale under a junior docketed judgment, the purchaser acquired the estate subject to the lien of any prior docketed judgment, which must be satisfied in full before his estate was free from its incumbrance.

In *Isler* v. *Colgrove*, 75 N. C. 334, it was held, that where a judgment creditor docketed his judgment, with a reference upon the judgment docket to the lien acquired by a levy,

and continued by subsequent writs of *venditioni exponas*, to the date of docketing, such a judgment was a lien prior to a judgment docketed before that was, but docketed after the levy, the lien of which had been continued as above stated. This conclusion was necessary, because if Foy's judgment had been considered a prior lien on the land, Isler would have lost the priority which he had acquired by his levy and which was preserved to him by the Constitution. Art. IV., § 25.

Isler had docketed his judgment in a reasonable time after the enactment of the Code, and before any sale was made under the Foy judgment, so that purchasers under that judgment had notice of the prior lien.

In the present case, the judgments in favor of Foster and Welch were not docketed in a reasonable time, nor before the sale at which the plaintiff purchased, so that he had no notice of their existence, and they have never yet been docketed. We cannot, therefore, give any effect to the sale under them, to divest by relation back the estate of March, and thus defeat the sale at which the plaintiff purchased.

2nd. The defendants further claim to defeat the plaintiff's title by reason of a purchase by them on the 8th of April, 1871, at a sale under executions issued upon two judgments obtained by Fannie Williams and Alice March against W. B. March, at Spring Term, 1868, of Davie Superior Court. Levies were made on these judgments in October, 1868. They were never docketed as judgments are required to be by the Code which became law in August, 1868, in order to give a lien on real property.

If the plaintiffs in these judgments had caused them to be docketed in a reasonable time, and before the sale under the execution at which the plaintiff in this case bought, then the plaintiff would have bought with notice of them, and the case would have resembled that of *Isler* v. *Colgrove.* But they did not perform the condition, viz.; docketing

their judgments, which the law imposes as precedent to making judgments a lien on real property. They are not *prejudiced* by the changes made by the Code. Their executions and levies retained all the force and effect which they had by the law before the Code. Perhaps they would have been entitled to the proceeds of the sale under which the plaintiffs purchased. But as their judgments were not docketed, they had no *additional* force by reason of the Code, and the sale notwithstanding these judgments and liens, passed the estate of W. B. March to the purchaser, unencumbered by these judgments. Most of the remarks made respecting the judgments of Foster and Welch, are applicable also to these.

As, for these reasons, we are of opinion that these judgments do not affect the plaintiff's title, it is unnecessary to notice the allegation that the judgments in favor of the defendants were fraudulent.

3rd. The defendants alleged that the estate of W. B. March had been divested out of him before the purchase by plaintiff in September, 1869, by a sale by a Collector of United States Internal Revenue on the 6th of January, 1869. As far as appears to us upon the record, this defence applies only to one lot in the town of Mocksville known as the Jesse Hendrix lot, &c. (which appears to have been sold on 6th February, 1869) and to some other piece of land which is not described with any certainty. We cannot say therefore whether this other piece of land described in the deed referred to, but not exhibited, covers all the other lands described in the complaint or not. Our opinion to this extent must be uncertain.

We suppose that the deed referred to, but the contents of which are not stated, does not, along with that exhibited, cover all the lands described in the complaint, but leaves certain pieces to which the defence now under consideration does not apply. If we are mistaken in this it is the fault of

the parties in presenting their case, and it can be corrected.

We proceed then to consider the validity of the sale by the Collector of United States Internal Revenue on the 6th of February, 1869.

Any difficulties which the question might in itself present, are increased by the uncertain and even contradictory manner in which the facts are stated in the record.

It appears however, that taxes to the amount of $3,580, were assessed against W. B. March and Hampton, under the Act of Congress for collecting Internal Revenue. This tax not being paid, the Collector offered for sale a certain lot the property of W. B. March, being one of the pieces of land demanded in the complaint, and perhaps also other pieces of land, described in the complaint, of which no description is furnished in the case, and it appears from the deed filed as part of the case, that one Peebles became the purchaser of this lot. Notwithstanding this, it seems to be assumed throughout the case, that the defendants, who are the daughters of W. B March, were the purchasers, and we must suppose that there was evidence that Peebles purchased for them. Only one objection is taken to the regularity of the Collector's sale, viz : That the Collector ought to have fixed the amount of the taxes owing ($3,580,) as the minimum price of all the property, whereas he offered it at a minimum price of $354. It seems from the deed to Peebles, that the minimum price of the Hendrix lot was $18. We do not understand the Act of Congress as requiring the Collector to regard the amount of taxes due, as the minimum price. Where several articles are sold separately, such a rule would be impracticable, and even absurd. What is meant by the minimum, is what the Collector thinks is the least price which the property ought fairly to bring, which shall be at least equal to certain costs mentioned in the Act.

The plaintiff however, seeks to impeach the title claimed under this sale, upon the ground that W. B. March with in—

tent to defraud his creditors, furnished the money to his daughters to buy the property with. The jury, in response to an issue submitted to them, find that he did so furnish the money. But they further find, that the defendants were not parties to his fraudulent purpose, and did not buy for his use. It is also stated in the case, that at the time of this sale, W. B. March was indebted to the defendants, in what amount is not stated, but we understand the case as meaning in at least as large a sum as the purchase money, which in the case of the Hendrix lot was $30. This being so, there is no evidence to support the finding of the jury as to March's intent, nor could his intent, if it were as found, affect the defendants, who purchased *bona fide* and for value.

It is said in *Worthy* v. *Caddell*, at this term, that the proper inquiries in such cases are, *First:* Did the defendant in the execution *procure* his property to be levied on and sold with intent to defraud his creditors ?

*Second :* Did the purchaser, purchase for value, and without notice of the fraudulent intent ?

It may be doubted if mere notice of the fraudulent intent, would invalidate the purchase of one who did nothing in aid of the intent, and who purchased for value, in its legal sense in such cases. That question however need not be discussed, as it does not arise here.

We are of opinion that upon the facts stated in the case, the estate of W. B. March in the property sold at the Collector's sale, passed to the purchasers at that sale, and that as to that property, the plaintiff could acquire no title by his subsequent purchase under execution. There is error.

PER CURIAM. *Venire de novo.*