WACHOVIA LOAN AND TRUST COMPANY, Receiver of J. W. Alspaugh, v. W. S. FORBES et al.

*Action to Set Aside Fraudulent Conveyance—Fraudulent Intent —Trial—Burden of Proof—Evidence—Dealings Between Mortgagor and Mortgagee.*

1. Where, in the trial of an action to set aside a sale as fraudulent, it appeared that the relation of the parties to the sale was not such as to raise a presumption of fraud, the burden of proving fraudulent intent was properly put upon the plaintiff.

2. Where, in the trial of an action to set aside a sale as fraudulent, the trial judge, in reciting the several grounds on which the jury might find a sale void, as in fraud of grantor's creditors, inadvertently used the conjunction "and," but in a subsequent part of the charge stated the grounds properly, connecting them with the disjunctive "or;" *Held*, that the error was cured.

3. Where the burden of proving the *bona fides* of a transaction is upon the defendant, he may, without introducing any evidence, rely on evidence introduced by the plaintiff from which, if sufficient, the jury may find the transaction to have been in good faith.

4. Inadequacy of price will not, in itself, vitiate a transaction; and, where a pledgee of stocks of the face value of $21,000 bought them from the pledgor for $7,000, and the jury found that the transaction was *bona fide*, but that the stocks were worth $8,500, the sale will not be declared a legal fraud and void.

CIVIL ACTION, brought by the plaintiff corporation, as receiver of the estate of J. W. Alspaugh, to set aside the sale of certain stocks by the said Alspaugh to the defendant who held them, at the time of sale, as collateral for a debt due to him, and tried before *Brown, J.*, and a jury, at December Term, 1895, of FORSYTH Superior Court. The facts sufficiently appear in the opinion of the court. The issues were found in favor of the defendants, and from a judgment dismissing the action the plaintiff appealed.

*Messrs. Jones & Patterson* and *A. E. Holton*, for plaintiff (appellant).

*Messrs. Watson & Buxton, Glenn & Manly* and *H. R. Scott*, for defendants.

FURCHES, J.: This case discloses these facts: That the defendant, Alspaugh, being in debt to the defendant, Forbes, had, in 1893, executed to Forbes a mortgage deed on real estate for $10,000, which mortgage had not been registered on the 9th of February, 1894; that prior to the 9th of February, 1894, the defendant, Alspaugh, had borrowed of defendant, Forbes, other sums of money, not embraced in the $10,000 mortgage, to the amount of $7,000; that as a security for this last mentioned sum the defendant, Alspaugh, had pawned with the defendant, Forbes, certificates of stock which he owned in the Empire Plaid Mills, in the A. H. Motley Tobacco Co. and the Cumberland Mills Co., three corporated companies under the above names, amounting in the aggregate to over $21,000 par value; that on the 9th day of February, 1894, the defendant, Alspaugh, sold these stocks to the defendant, Forbes, for the sum of $7,000, or, in other words, in payment of the debt for which they were pledged. Alspaugh was badly insolvent at this time, of which fact the defendant,

Forbes, had notice, and on the next day (February 10), Alspaugh made a general assignment to D. Schenck, as trustee.    The plaintiff, as receiver, appointed at the instance of judgment creditors, institutes this action to vacate this sale of stock by defendant, Alspaugh, to defendant, Forbes, upon the ground of fraud.

The defendant, Forbes, answers and denies the allegation of fraud.    But he admits in his amended answer that on the 9th day of February, 1894, and for a long time before that, he had in his possession the stocks mentioned, which he held as security for $7,000 loaned to the defendant, Alspaugh.    And on that day it was agreed between him and Alspaugh that he should become the absolute owner of them, and he "thinks" he surrendered to Alspaugh the notes he held as evidence of this $7,000 indebtedness.

On the trial the defendants offered no evidence.    But plaintiff offered in evidence a deposition of defendant, Forbes, taken in another action, as declarations and admissions of said Forbes.    This deposition furnished evidence tending to show knowledge of Alspaugh's insolvency on the 9th of February, 1894, and that Forbes took the stocks in satisfaction of the debt for which they were pledged, and that he did not know the value of said stocks, and made no inquiry of Alspaugh, nor any one else, as to their value.    But it also tended to show the *bona fides* of the transaction, and that he had paid $7,000 for them, which he alleges was a fair and reasonable price for these stocks.

The court submitted, without objection, the following issues to the jury:

1.  "Was the sale and transfer of the stocks, described in the complaint, made on February 9, 1894, by J. W. Alspaugh to W. S. Forbes, fraudulent and void as to the creditors of Alspaugh?    Answer: No."

2. "At the date of the said sale, to-wit, February 9, 1894, and prior thereto, did defendant, Forbes, hold the said stock in his possession as collateral security for a debt then due to Forbes by Alspaugh, as alleged in defendant's answer? Answer: Yes."

3. "If so, what sum was actually due and owing on said debt by Alspaugh to Forbes, February 9, 1894? Answer: $7,070."

4. "What was the actual value of said stock at the time of said sale? Answer: $8,500."

In the charge of the court the burden of proof upon the first issue (as to the fraudulent intent) was put upon the plaintiff. But upon the second issue (as to the transfer of the pledged stock by Alspaugh to Forbes) the court put the burden as to the *bona fides* and full and fair consideration on the defendants. The plaintiff complains of this division of the subject by the Judge, and insists that the burden of both issues should have been put upon the defendants. We do not think so. The two issues were as distinct as if they had been in separate actions and were governed by different rules and distinct principles. There being no relation between the defendants that created a presumption of fraud as to the first issue, the burden was upon the plaintiff.

But as to the second issue, when it was shown and admitted that the defendant, Alspaugh, sustained the relation of pawner and Forbes that of pawnee as to the *stocks*, a relation similar to that of mortgagee with power of sale, the burden changed to the defendant. Story on Bailment (9th Ed.), Section 322; *Rose* v. *Coble*, 61 N. C., 517. And it seems to be well settled in this State that where a mortgagee, with power of sale, purchases the reversion in the property mortgaged and the transaction is attacked, the burden rests upon the mortgagee to show that the sale was

fair and that he paid a fair and reasonable price for the reversion. *Lee* v. *Pearce*, 76 N. C., 87; *Brown* v. *Mitchell*, 102 N. C., 347; *McLeod* v. *Bullard*, 84 N. C., 515, and 86 N. C., 210. And this being a pledge of *stocks* in which a sale without notice would pass the absolute title to the purchaser (Story on Bailment, *supra*), the bailee or pawnee must be subjected to the same burden of proof as the mortgagee, who purchases the reversion. The Judge who tried the case observed this rule and charged the jury upon this issue as follows: "In view of this admission (that he held these stocks as a pledge before the 9th of February, 1894), upon the part of the defendant, if you find the sale was made without fraudulent purpose and intent on the part of Alspaugh, the burden of proof shifts, and it becomes the duty of the defendants to show that such sale was fair and that it was made upon full and fair consideration, and, if the defendant fails to show that, then the law declares the absolute sale of the stocks void." This seems to us to be the law, and that it was fairly presented to the jury.

The learned counsel excepted to the charge of the court where it is said more than once in the early part of the charge (upon the first issue) that if the jury should find that this transaction "was for the purpose of hindering, delaying and defrauding Alspaugh's creditors *and* for the ease and comfort of defendant, Alspaugh," it would be void. It was contended that, these being connected by the conjunction "*and*," it made it necessary that the jury should find both the intent to defraud creditors and to give ease and comfort to Alspaugh, before they could find the transaction fraudulent. Whereas the finding of either would have been sufficient to invalidate the transaction. And it is true, as contended, that either would have been sufficient to avoid the transaction. But the court further on in the charge says that if "Alspaugh was actuated by a

purpose to hinder *or* defraud his creditors *or* by a pur-
pose to give ease and comfort to himself," the transaction
would be fraudulent and void.  This distinct enunciation
of the law in the latter part of the charge must, as we
think, have corrected any erroneous impression that may
have been conveyed by the former statement."

Judges, in the hurry that often attends trials in courts
below, are liable to misuse a word sometimes; as, for in-
stance, the conjunctive *and*, where the disjunctive *or* should
have been used.  But the object of such trials is to get to
the merits of the case, and where it appears that such slips
have been cured, or that no harm could have come from
them, we are unwilling to award a new trial.

The plaintiff further contended that as the burden was
thrown upon the defendants, in the consideration of the
second issue, and as the defendants introduced no evidence,
it was the duty of the court to charge the jury that they
should find that issue for the plaintiff, that is, that they
should find the transaction to have been fraudulent.  And
this, at first thought, seemed to us to be so.  But the plain-
tiff introduced the deposition of the defendant, Forbes,
which defendants had the right to use, as they did any other
evidence introduced by the plaintiff.  And this evidence,
if believed, and that was a matter for the jury, tended to
establish the *bona fides* and a fair if not a full considera-
tion paid by Forbes for the stocks.

There still remains one other question to be considered,
and that is the value of said stocks which was found by the
jury to be $8,500, this being $1,430 more than Forbes paid
for the stocks.  In considering this question several matters
have to be considered.

It being found that there was no intentional fraud or
*mala fides* involved in this transaction, the parties, Alspaugh
and Forbes, stand as though they were dealing on equal

footing—at arms' length. The question is then presented as to whether a chancellor would feel called upon to set aside a sale of stocks of the par value of $21,000 that had no marketable value and sold for $7,000 because it was afterwards found by a jury that they were in fact worth $8,500, upon the ground that the difference in the price paid and the actual value was so great that this alone constituted fraud—that such a transaction was calculated to shock the moral sense, upon hearing it, and cause one to exclaim "Fraud!" *Potter* v. *Everett*, 42 N. C., 152. Indeed, it is doubtful whether a court of equity will set aside a conveyance upon the ground of inadequacy of price alone. *Osborne v. Wilkes*, 108 N. C., 651. This discrepancy is considerable ($1,430), and in a transaction where less was involved, or where the property sold had a fixed and known value, it would likely produce a different impression upon the mind. But stocks of this kind are of the most uncertain value of all properties. No matter how valuable the plant and outfit of the milling and manufacturing companies may be, their stocks are worth nothing until the liabilities are paid. So, after considering this matter fully, we cannot think that, if this transaction had been between parties on equal terms, any chancellor or court of equity would feel called upon to declare it a legal fraud and void. The judgment is affirmed.

Affirmed.