[Civ. No. 1198.   Fourth Appellate District.—September 30, 1936.]

EDITH I. MAYFIELD, Respondent, v. THE FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant.

614

Sanders & Jacques for Appellant.

Wright, Monroe, Thomas & Glenn for Respondent.

JENNINGS, J.—Plaintiff, as beneficiary in a policy of accident insurance issued by defendant, instituted this action to recover the amount specified in the policy for the accidental death of the insured. The trial of the issues which were raised by the pleadings of the parties was had before the court and a jury selected for the purpose and resulted in the return of a verdict in plaintiff's favor for the amount demanded. Judgment in plaintiff's favor was thereafter duly rendered. From the judgment thus entered the defendant has prosecuted the present appeal.

Numerous specifications of error which are claimed to have been committed by the court during the progress of the trial are relied upon as warranting a reversal of the judgment. Before giving consideration to them it may properly be observed that the record demonstrates that plaintiff made out a *prima facie* case authorizing recovery by showing that the policy of insurance had been duly issued and once renewed by defendant, that the annual premiums due on the policy were paid, that the policy provided that in case of loss of life of the insured resulting from bodily injury sustained through specified accidental means the insurer would pay to the beneficiary named in the policy the sum of $5,000, that plaintiff was the beneficiary named in the policy, that the insured lost his life as a result of bodily injury sustained by him through accidental means as defined and limited by the terms of the policy during the time the policy was in force, that proof of loss was duly given as required by the terms of the policy, and that defendant refused to pay the sum stated in the policy for loss of life, but, on the contrary, gave notice that it rescinded the contract of insurance and tendered to plaintiff the sums paid as premiums on the policy, together with interest, which plaintiff declined to accept. Defendant's answer to plaintiff's complaint alleged as affirmative defenses, first, that the contract of insurance was not made with the person named in the policy as the insured, but was made with plaintiff; second, that at the time the insured lost his life plaintiff had no insurable interest in his life; third, that plaintiff in the application for the policy which was made a part thereof, made certain false, untrue and misleading statements relative to the habits of life of the insured which were made with the intent of deceiving

defendant and which did deceive defendant and caused defendant, believing said statements to be true, to agree to the issuance of the policy. ▮ With respect to such affirmative defenses thus alleged the burden of proof rested upon defendant to establish them. (*Mattson* v. *Maryland Casualty Co.*, 100 Cal. App. 96 [279 Pac. 1045]; *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal. App. 308 [299 Pac. 831].)

▮ Appellant's first contention is that the trial court improperly permitted certain evidence to be introduced. The evidence which is claimed to have been inadmissible consists of the statements of the insured made to various persons. These statements fall into three classes. The first of them consists of statements made by him to respondent relative to his authorizing her to sign his name to the application for the policy. The second class consists of certain statements purportedly made to third persons wherein the insured recognized the existence of the policy and his approval of it. The third class consists of statements made to third persons wherein the insured admitted that he was indebted to respondent.

The first of the above-mentioned classes of declarations relates to certain testimony given by respondent herself. She was permitted to testify without objection that she signed the name of the insured to the application at his request and that at the time she did so she telephoned him with regard to taking out the insurance and he directed her to sign his name to the application and requested her to advance the initial premium. She was also permitted to testify without objection that prior to the renewal date of the policy the insured telephoned her and inquired as to the renewal date and on being informed thereof requested her again to advance the amount required to renew the policy. Subsequently during the trial appellant moved the court to strike out the above-mentioned testimony, which motion was denied. It is maintained that the denial of the motion was erroneous and that the testimony should not have been permitted to stand for the reason that the statements attributed to the deceased were purely in support of his own interest and therefore inadmissible.

The evidence was properly admitted and the trial court's refusal to strike out the testimony was correct. One of the principal issues in the case was whether the policy of

insurance was a contract between insurer and insured or between insurer and respondent. Respondent maintained that the former was the case and that, although she signed the insured's name to the application she did so as his agent under his authorization and direction. It is a settled principle of the law of agency that when the fact of agency is in dispute it may be established by the testimony of the agent who is a competent witness to prove the fact. (2 American Jurisprudence, p. 353.)

The second of the above-mentioned classes of evidence was also properly admitted. The fact of agency was, under the circumstances, an important feature of the case. Agency may be shown either by proof of direct authorization or by proof of subsequent ratification. Respondent was clearly entitled to prove not only that direct authorization was given her to sign the insured's name to the application but also that subsequent to the issuance of the policy he made statements which showed that he knew of the issuance of the policy. Knowledge on his part of the existence of a policy of insurance in which he was named as the insured was a fact that pointed strongly to ratification by him of respondent's act of signing his name to the application.

The third class of evidence was likewise properly received. This class consisted of statements of the insured wherein he admitted that he was indebted to respondent. One of the recognized exceptions to the rule which prohibits the admission of hearsay evidence is that which permits evidence of the declarations of a person against his interest. The reason for the exception is that it is presumed that a declaration so made is truthful. The exception applies to declarations of deceased persons as well as to those of the living. (*Rulofson* v. *Billings,* 140 Cal. 452, 458 [74 Pac. 35].) The admission of a person that he is indebted to another is a declaration against interest and is clearly within the above-stated exception.

Furthermore, with respect to the second and third classes of evidence of whose admission appellant complains, certain observations are proper to be made. As to the second class, even if it be conceded that it was erroneous to permit its reception, the error is not sufficiently serious to warrant a reversal of the judgment. As above noted, evidence that the insured had admitted that he knew that

the policy had been issued was directed to the issue that the contract of insurance was one between him and appellant and pointed particularly to a ratification by him of the contract which admittedly he had not himself executed. However, respondent had herself testified to the fact that she had been expressly authorized to execute the contract for the insured and in his name. The evidence of his subsequent recognition of the existence of the policy had a bearing on the question of agency alone. This evidence was merely cumulative with respect to the fact of agency and as the respondent's testimony was ample to establish this fact the reception of additional evidence tending to establish the same fact, even though erroneous, was not prejudicial to appellant. ■■ With regard to the third class it is obvious that it had a bearing solely on the issue of insurable interest. However, the jury made a special finding that the contract of insurance was between appellant and the insured which entirely eliminated the question of insurable interest of respondent in the life of the insured. (*Comegys* v. *National Union Assur. Soc.*, 3 Cal. App. (2d) 637, 639 [39 Pac. (2d) 861].) Therefore, even if it be conceded that the third class of evidence was erroneously admitted, no possible prejudice could have resulted therefrom and the error was harmless. Finally, it should be noted with respect to both classes under discussion that the evidence comprised within them was restricted to the two issues heretofore mentioned and the jury was instructed that it was to be considered only with respect to said issues.

■■ Appellant further complains that the respondent was herself permitted to testify that the insured was indebted to her in an amount in excess of the sum which the contract of insurance provided should be paid in the event of death. The ground of this objection is that she was thereby allowed to vary the terms of a written contract which she had herself executed. Proper consideration of this contention requires a brief recital of certain facts established by the evidence. At the time application for the insurance was made respondent was the wife of the insured. Approximately eight months thereafter an action for divorce was instituted by the insured against respondent. The latter filed an answer and cross-complaint in the action and later secured an interlocutory decree of divorce. On

the date on which this decree was rendered a property settlement agreement was executed by the parties to the divorce suit. By the terms of this agreement respondent expressly waived and relinquished any right or claim she might have to any real or personal property which might thereafter be acquired by her husband. No˙ mention was made of the insurance policy in the agreement.

It is perhaps a sufficient answer to appellant's contention in this regard to point to the fact that the jury by its special finding that the contract of insurance was made between respondent's husband and appellant effectually eliminated the question of insurable interest. If, therefore, it be conceded that the ground of appellant's objection is correct and that the evidence should not have been admitted for the reason stated, the error committed in its reception is harmless. ■ However, it should also be observed that respondent did not base the present action on the property settlement agreement which she entered into with her husband. The instant action is on a policy of insurance issued by appellant who is a stranger to the property agreement. Appellant could not therefore be bound by the agreement between respondent and her husband and would be at liberty to show that the written agreement did not express the full or true character of the transaction. Since appellant had the right thus to vary or contradict the written agreement by parol evidence respondent, although a party to the agreement, had an equal right to do so. (22 Cor. Jur., p. 1292; *Budd* v. *Hughes,* 176 Cal. 687 [171 Pac. 287]; *Spraul* v. *Garliepp & Mack,* 138 Cal. App. 491, 494 [32 Pac. (2d) 657].) ■ Finally, it may be observed that at the time the property settlement agreement was entered into between respondent and her husband the right of the former under the policy of insurance was no more than an expectancy. The policy of insurance expressly reserved to the insured the right to change the beneficiary without respondent's consent. Respondent's right under the policy was not a property right and not therefore a proper subject of a property settlement contract. (*Sandrosky* v. *Prudential Ins. Co.,* 217 Cal. 578 [20 Pac. (2d) 325].)

■ With regard to the property settlement contract it is further contended that the trial court erroneously refused to permit appellant's counsel to cross-examine re-

spondent with respect to what was included in said agreement. The particular inquiry which the court refused to allow answered was as follows: "When you came to get your divorce in December, 1932, you and he entered into a property settlement agreement, and in that agreement you agreed with each other that neither one of you had any claims upon the other; is that right?" The court thereupon remarked that the agreement was in evidence and that it spoke for itself. The trial court was correct. In the form in which the inquiry was framed it called for the conclusion of the witness and was clearly objectionable for this reason.

Appellant further contends that the trial court erroneously overruled its objection to a certain inquiry propounded to the respondent on her direct examination. The question to which objection was interposed called for a recital of a conversation which occurred between respondent and the soliciting agent of appellant regarding the answer to be given to a certain question contained in the application for insurance. The question which provoked the discussion between respondent and the agent was as follows: "Are your habits of life correct and temperate?" In this connection it is also contended that the trial court committed reversible error in permitting another witness who stated that she was present at the time the application was signed to testify with respect to the discussion that ensued between respondent and appellant's agent regarding the answer to be given to the above-quoted question contained in the application.

In giving consideration to appellant's contentions in this regard, it should be borne in mind that appellant in its answer had set up the affirmative defense that the answer returned to the above-stated inquiry in the application was false and misleading and made with the intent to deceive appellant and that the false answer given in response to the inquiry did deceive appellant to its detriment. It should also be borne in mind that the inquiry was contained in a blank form of application prepared by appellant. It is our opinion that the correct meaning of the word "temperate" is not so clear as to render any explanation of the sense in which it was used by appellant unnecessary. The question of whether or not an individual is temperate calls for an an-

swer in which the factor of opinion enters to some considerable degree. Appellant was responsible for the form of the inquiry and respondent was entitled to be advised as to what meaning appellant placed upon its own phraseology. It is our opinion that no error was committed by the court in overruling appellant's objections to the inquiries propounded and in permitting the witnesses to relate the substance of the conversation.

It is further contended that the trial court erred in denying appellant's motion for a nonsuit which was presented at the close of respondent's case. The grounds of the motion were that the evidence showed that the contract of insurance was between respondent as the beneficiary named in the policy and appellant and that there was a failure of proof that respondent had an insurable interest in the life of the insured. The court, in denying the motion, ruled that a *prima facie* showing had been made that the contract was between the insured named in the policy and appellant as insurer and that the question of insurable interest was therefore immaterial at that stage of the case since the law declares that everyone has an insurable interest in his own life. In thus holding the court committed no error.

An additional and third ground of the motion, however, deserves special consideration. This ground was that there was a concealment by respondent of a fact material to the issuance of the policy and a wilful and fraudulent representation by her as to a fact that was material to the risk or hazard which was to be assumed by appellant in executing the contract of insurance. The fact which forms the basis for this third ground of the motion and which is now particularly urged by appellant in its attack upon the court's denial of the motion for nonsuit relates to the habits of life of the insured. As heretofore noted, the application contained the following question: ''Are your habits of life correct and temperate?'' An affirmative answer was returned to this question by respondent, acting as her husband's agent in making the application. It is urged that the evidence which was before the court when the motion for nonsuit was presented showed that respondent, in returning an affirmative answer to the question, wilfully concealed from the insurer the highly material fact that her

husband was habitually intemperate in his indulgence in alcoholic liquor and deliberately, intentionally, and fraudulently represented that he was temperate in his habits, whereas she knew to the contrary that he was habitually intemperate. It would be a sufficient answer to appellant's contention to point to the fact that this particular ground of the motion constituted an affirmative defense set up by appellant in its answer. It was an issue raised directly by appellant and the burden of establishing it rested upon appellant. Respondent was not required to meet this issue in order to make out a *prima facie* case entitling her to recover. However, this matter was also urged by appellant as one of the chief grounds in support of its motion for a directed verdict which was presented at the close of the entire case and is here urged as a basis for the contention that the court erred in denying such motion. It is obviously one of the most important features of the entire case and may therefore with propriety be now examined. Its consideration requires a recital of the evidence bearing on the matter as the same appears in the record.

As heretofore noted, the trial court over appellant's objection permitted the respondent and another witness to testify regarding the discussion which ensued between respondent and the soliciting agent of appellant when the above-quoted question relating to the habits of life of the insured was encountered in the application. The respondent testified in substance that she explained to the agent who called on her to solicit the application for insurance that, although her husband indulged in the use of intoxicants, he did not drink to excess. She further testified that the agent asked her if the insured drank to such an extent that he could not carry on his business, to which she replied "Absolutely not" and that while his indulgence in alcoholics made him quarrelsome and ugly it did not prevent his carrying on his business affairs. She also stated that the agent said: "That is what the question means" and thereupon himself wrote the answer "yes" to the question contained in the application. Another witness who was respondent's mother testified that she was present when the application was signed and that she heard respondent tell the agent that the insured "didn't get in a state from drinking that he couldn't carry on his business". The agent who soli-

cited and procured the application for insurance was called as a witness for the appellant and testified that the respondent told him that the insured took an occasional drink and and that he then asked her if he drank to excess, habitually, to which inquiry respondent returned a negative reply upon which he remarked: "We couldn't issue a policy in that case." This witness further testified that respondent did not state to him that her husband habitually partook of intoxicating liquor. It is apparent, therefore, that there was a sharp conflict in the evidence with respect to the disclosures that were made by respondent to the agent regarding the habits of life of the insured with reference to his use of intoxicating liquor. It must, however, be further observed that the complete record of the divorce action between respondent and her husband was offered in evidence by appellant and was admitted. The verified cross-complaint filed by respondent in said action forms a part of this record. In this pleading it was alleged as the single ground for divorce that from the date of marriage the husband had been habitually intemperate in the use of intoxicating liquors to such an extent that it inflicted great mental anguish upon the wife. It also appeared that an interlocutory decree of divorce was granted in respondent's favor and that findings were expressly waived by the parties. The interlocutory judgment, however, contains a recitation to the effect that it appeared to the trial court that each and all of the facts alleged in respondent's cross-complaint were true.

In giving consideration to appellant's contention that the evidence showed that the defense of misrepresentation was established, it may be assumed that the inquiry respecting the insured's habits of life related to a fact that was material to the risk which appellant was about to assume. We do not understand that it is otherwise contended by respondent.

It may also properly be observed that the form of the inquiry contained in the application was most general. It was not specific as, for example, it would have been if it had been in the following language: "Do you use intoxicating liquor?" The inquiry as to whether one's habits of life are temperate necessarily calls for the opinion of the person to whom the inquiry is directed. This must be true

because the word "temperate" is not susceptible of exact definition. The expression "temperance" covers a broad field and while it is here limited to the matter of indulgence in alcoholic beverages its precise meaning is nevertheless not simple of expression. It may be conceded that it is not synonymous with abstinence. On the contrary, it conveys the idea of indulgence. Having bound up in it this idea it is clear that the phrase calls for an expression of opinion and one as to which there is a wide diversity. In its reliance upon the record in the divorce action as furnishing conclusive evidence of respondent's misrepresentation and concealment appellant contends that, since section 107 of the Civil Code definitely provides that habitual intemperance must continue for a period of one year before it becomes a ground for divorce, it is apparent that there was misrepresentation as to the fact of intemperance at the time the application was made. However, it must be noted that the allegations of respondent's cross-complaint were that the habitual intemperance of her husband was of such character that it inflicted upon her a course of great mental anguish. Habitual intemperance is defined in section 106 of the Civil Code as being that degree of intemperance which disqualifies the person for a great portion of the time from properly attending to business or which would reasonably inflict a course of great mental anguish upon the innocent party. It is evident, therefore, that respondent contended in her action for divorce that the habitual intemperance of which she complained was not such that it disqualified her husband from properly attending to his business but that it was such that it caused her great mental anguish. It is also apparent that the decree of divorce followed the allegations of the cross-complaint. The documentary evidence consisting of the record in the divorce case may not then be said to conflict with respondent's version of the conversation which she had with appellant's agent for she testified that she informed the agent that her husband used intoxicants to the extent that it made him quarrelsome and ugly but not to the extent that it disqualified him from attending to his business. Three other witnesses also testified as to the insured's indulgence in intoxicants and it is significant that none of them stated that the insured used liquor to the extent that it interfered

with the proper conduct of his business. On the contrary, each of these witnesses who had been acquainted with the insured for varying lengths of time testified that he had never seen him use intoxicating liquor to excess. These witnesses testified on behalf of respondent. Appellant produced no independent evidence other than the record of the divorce action which tended affirmatively to show that the insured was not in fact temperate in his use of intoxicating liquor. Furthermore, appellant produced no evidence as to what it meant by the use of the word "temperate". Yet it must be remembered that misrepresentation of the fact of intemperance was set up as an affirmative defense in appellant's answer and it was further charged that the misrepresentation was made with the intent to deceive and that it did deceive appellant.

It is further urged that even though it be conceded that full disclosure of the facts relating to the insured's use of intoxicating liquor was made to the agent who took the application nevertheless the agent was not authorized to change the policy or to waive any of its provisions as the policy itself plainly prohibited any change in its terms or waiver of any provision by an agent. It is then contended that even though the agent was fully advised as to the insured's use of intoxicants he was not empowered to interpret the word "temperate" as the same was used with reference to the insured's habits of life and he was not authorized to waive the condition of the policy which required the insured to be temperate in the use of intoxicants in order to be insurable.

With respect to this contention the evidence which was produced with reference to the relationship which the person who received the application for insurance bore to appellant may properly be examined. It was shown that he was employed by and was a director of the Kettner-Stafford Goldsmith Co., Ltd., a corporation which was engaged in general insurance business in the city of San Diego. The concluding paragraph of the policy of insurance which was issued by appellant is in the following language: "In Witness Whereof the Company has caused this policy to be signed by its President and its Vice President-Secretary but the policy shall not be binding upon the Company until countersigned by a duly authorized representative of the

company.'' The policy bore the signature of Wallace Fetzer, as president and Charles G. Newmiller as vice-president-secretary. Immediately below the above-mentioned signatures appeared the following notation: "Countersigned by Kettner-Stafford-Goldsmith Co., Ltd., by Joe M. Elmer." It is undisputed that the name of the person who called on respondent and secured the application for insurance was Joe M. Elmer. This individual was called as a witness by the appellant and during the course of his cross-examination testified that the policy of insurance which formed the basis of the present action was written in the office of the Kettner-Stafford-Goldsmith Company in the city of San Diego by a policy writer employed by said company on a blank form of policy furnished by appellant on which the signatures of appellant's officers were printed and that the only actual signing of the policy was done in the office of the Kettner-Stafford-Goldsmith Company in San Diego.

It is apparent from the above-described evidence as to which there is no conflict that we have here something essentially different from a waiver of conditions by a mere soliciting agent. We have an interpretation of certain language used by the insurer in its printed form of application which interpretation was given by an officer of a corporation that was the general agent of the insurer. Appellant points to the fact that the policy itself which the undisputed evidence showed was delivered to respondent provided as follows: "No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon." It is then further observed that no evidence was submitted which tended to show that any executive officer was ever apprised of the disclosures which respondent testified she made to the agent relative to her husband's use of intoxicants and that the policy contains no endorsement of approval by any such officer of any change in the policy that would permit of its issuance in the face of such disclosures. The obvious answer to that part of the argument which pertains to the requirement of approval by an executive officer of the company is that it is not pretended that there was any change in the policy. It is contended that full disclosure of the insured's habits with respect to

the use of intoxicants was made to the agent who thereupon said that the information transmitted to him did not indicate that the insured was intemperate within the meaning of the language used in the inquiry. If, then, it may be properly said that there was a waiver of a provision or condition requiring the insured to be temperate in the use of intoxicants there was evidence which tended to show that the waiver was accomplished by appellant's general agent. It may be regarded as settled in California that a general agent vested with full authority to consummate a contract of insurance has the power to waive conditions and forfeitures although the policy contains an express limitation of the authority of agents to bind the insurer by waiver of conditions which are set out in the policy. (*Knarston* v. *Manhattan Life Ins. Co.*, 140 Cal. 57 [73 Pac. 740]; *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, 124 [138 Pac. 708, 52 L. R. A. (N. S.) 670]; *Vierra* v. *New York Life Ins. Co.*, 119 Cal. App. 352 [6 Pac. (2d) 349].)

With respect to the feature of waiver it is proper further to observe that appellant's contention that no waiver of any provision of the policy could be accomplished by an agent of the insurer is based on the assumption that the fact of intemperance of the insured was established by the evidence. With this basic assumption we cannot agree. The jury returned a general verdict in favor of respondent. In support of this verdict and the judgment which followed it a reviewing court is entitled to assume that the jury found that the affirmative defense of misrepresentation had not been established by appellant. As heretofore noted the misrepresentation relied upon by appellant as sufficient to enable it to avoid its contract related not to a definite, readily definable fact, but to a matter which necessarily called for an expression of opinion. Appellant itself selected the language which formed the inquiry and is therefore responsible for any lack of clarity or ambiguity or difficulty of definition of the phraseology which it elected to employ. The meaning of the word "temperate" as used in the application for insurance is largely a matter of opinion depending upon the liberality of view entertained upon the subject by the individual. In the absence of any standard of measurement, the question was one of fact to be determined by the jurors, whose conclusion with respect

thereto would depend largely upon their opinion as to what the word "temperate" means. The record is bare of any showing that the insured used intoxicants to the extent that his indulgence therein interfered with the conduct of the business in which he was engaged. There was evidence that he drank to an extent that made him quarrelsome and ugly and inflicted upon respondent a course of great mental anguish. Here again the factor of the opinion of an individual complicates the problem. Different individuals do not entertain the same opinion with respect to the use of intoxicating liquor. For all that appears, respondent may be so constituted that the consumption by her husband of a very moderate quantity of intoxicating liquor on one occasion or on a number of occasions widely separated in point of time may have caused her keen mental anguish. All of this simply serves to emphasize the fact that the question of whether an individual is temperate or intemperate in the use of alcoholic beverages depends largely on opinion and presents a problem which is eminently proper to be determined by the triers of fact. (*McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133 [183 Pac. 373].) We think, therefore, that the trial court did not err in denying appellant's motion for a directed verdict.

Appellant further contends that the court committed reversible error in submitting to the jury a special interrogatory and in declining to submit four other special interrogatories which were specifically requested by appellant. The special interrogatory which was submitted by the court was as follows: "Was the contract of insurance a contract between the defendant, The Fidelity and Casualty Company of New York and Robert Frank Mayfield?" The interrogatories which appellant prepared and requested the court to submit related to the matters of insurable interest and misrepresentation and concealment by respondent.

With respect to this contention it may be observed that section 625 of the Code of Civil Procedure provides as follows: "In an action for the recovery of money only, or specific real property, the jury, in their discretion may render a general or special verdict. In all other cases, the court may direct the jury to find a special verdict in writing upon all, or any of the issues, and in all cases may

instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon.'' It is obvious from this language that the submission of special interrogatories to a jury rests in the sound discretion of the trial court and that interference with the court's discretion is not warranted unless it is clearly made to appear that the discretion has been abused. (*Olmstead* v. *Dauphiny*, 104 Cal. 635, 641 [38 Pac. 505] ; *Oberholzer* v. *Hubbell*, 36 Cal. App. 16, 19 [171 Pac. 436] ; *McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133, 147 [183 Pac. 373] ; *Weintraub* v. *Soronow*, 115 Cal. App. 145, 152 [1 Pac. (2d) 28].) It does not appear that the court abused its discretion with respect to this feature of the case and appellant's contention in this regard is entirely lacking in merit.

██  Appellant contends that the trial court erred in refusing to give to the jury certain instructions which were requested by it and in giving certain instructions which are criticized as containing incorrect and misleading advice with respect to the legal principles involved in the action. Two of the instructions which were given by the court deserve special mention and consideration.

In one of these instructions the court, in referring to the issue of whether or not the contract of insurance was made by the insured, stated that the uncontradicted evidence showed that respondent signed her husband's name to the application. The court then said: ''She would have a right to do that if she were authorized by her husband to do that or if, after she had done it, he knew about it *or* acquiesced or agreed that it was all right.'' (Italics ours.) The obvious objection to this language is that the disjunctive ''or'' was used when it is apparent that the conjunctive ''and'' should have been employed.

Assuming that no typographical error has been committed and that the phonographic reporter correctly reported the court's language we are nevertheless constrained to hold that the use of the improper disjunctive rather than the obviously proper conjunctive was harmless. It is fundamental that, in examining instructions, a part of one instruction may not be separated from its context and made the object of special criticism if the instructions taken in their entirety correctly advised the jury as to the

law. Application of this rule to the above-quoted language produces the conviction that the error therein appearing was not sufficiently prejudicial to appellant to warrant reversal of the judgment. In the same paragraph in which the criticized language appears the jury was advised that if respondent was authorized by her husband to sign his name to the application or that if she was not authorized by him in the first instance he ratified her action by his subsequent approval the jury would be justified in finding that the contract was the husband's contract but that if the jury found that the husband had not authorized the making of the contract and knew nothing about it and did not ratify it the jury would be relegated to finding that the contract was not the husband's contract but was the respondent's contract. It is, we think, manifest that the instruction as to the feature of ratification taken as a whole was not misleading. In arriving at this conclusion we are fortified by certain decisions of our own courts wherein it has been held that the employment of the improper article ''a'' in place of the proper article ''the'' was not so palpably misleading as to require reversal of the judgment. (*Squier* v. *Davis Standard Bread Co.,* 181 Cal. 533 [185 Pac. 391]; *Freiburg* v. *Israel,* 45 Cal. App. 138 [187 Pac. 130].) We find further support for our conclusion in certain decisions of the courts of other states wherein misuse of the conjunctive and disjunctive has been held harmless error not warranting reversal of the judgment. (*Dickinson* v. *Davis,* (Mo. App.) 284 S. W. 815; *Citizens' Gas-Light & Heating Co.* v. *O'Brien,* 118 Ill. 174 [8 N. E. 310]; *O'Connor* v. *Langdon,* 3 Idaho, 61 [26 Pac. 659]; *Wachovia Loan & Trust Co.* v. *Forbes,* 120 N. C. 355 [27 S. E. 43].)

The second criticized instruction which is here selected for special mention is as follows: ''To establish such evidentiary fact of bad faith or deception the evidence should be clear and satisfactory.'' This language was used by the court in advising the jury relative to the affirmative defense of misrepresentation respecting the insured's habits of life. In effect, the court told the jury that the defense thus presented amounted to a charge of fraud on the part of respondent entitling appellant to avoid its contract. The court clearly pointed out that the burden of proof rested

upon appellant to establish the defense by a preponderance of the evidence. It is our opinion that taking the court's instruction relative to appellant's defense of fraud in its entirety the jury was properly advised with respect to such defense and that the criticized language is not susceptible of attack on the ground that it may have misled the jury into believing that the burden of establishing the defense by more than a preponderance of the evidence was imposed upon appellant. (*Hanscom* v. *Drullard,* 79 Cal. 234, 238 [21 Pac. 736]; *Edmonds* v. *Wilcox,* 178 Cal. 222, 224 [172 Pac. 1101].)

With· regard to other instructions given by the court which are attacked on this appeal and appellant's complaint that the court erroneously refused to give certain instructions which it offered, it is a sufficient answer thereto to remark that an examination of the instructions in their entirety impels the conclusion that the jury was fully, fairly and correctly advised with respect to the law and that no reversible error was committed by the trial court in this regard.

It is finally contended that the judgment and the verdict upon which it is based are lacking in evidentiary support. The record fails to sustain the contention.

▇▇▇ Appellant has attempted to appeal from the trial court's order denying its motion for a new trial. Since no appeal lies from such an order the attempted appeal therefrom is dismissed.

For the reasons stated the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.